**2023 UT App 134**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
BRENT E. TAYLOR,
Appellant.

Opinion
No. 20230534-CA
Filed November 2, 2023

Fourth District Court, American Fork Department
The Honorable Roger W. Griffin
No. 181101530

Margaret P. Lindsay and Douglas J. Thompson,
Attorneys for Appellant

Sean D. Reyes and William M. Hains,
Attorneys for Appellee

JUDGE JOHN D. LUTHY authored this Opinion, in which
JUDGES GREGORY K. ORME and RYAN M. HARRIS concurred.

LUTHY, Judge:

¶1     The district court revoked Brent E. Taylor's pretrial release after determining that he had been exaggerating his health problems to avoid trial. We are asked to decide whether the court abused its discretion by declining to postpone a scheduled pretrial status hearing and whether it erred by determining that there had been a material change in circumstances justifying a change in Taylor's pretrial release status. Because we determine that Taylor had a sufficient opportunity to present evidence contesting his pretrial release revocation at the scheduled hearing, we conclude that the district court did not abuse its discretion when it declined to grant a continuance. While we are not convinced that the court's finding of a material change in

circumstances based on Taylor's nonappearance at scheduled proceedings is supported by the record, we affirm the finding of a material change in circumstances on the alternative ground that Taylor's malingering indicated that he was an increased flight risk.

## BACKGROUND

¶2      Taylor was charged with forcible sodomy, a first-degree felony, in November 2018. The district court released Taylor pending trial and allowed him to reside in Colorado, but the court imposed several pretrial release conditions. Specifically, the court required him to (1) place a sign on his home in Colorado indicating that youth were not allowed inside, (2) receive weekly random home visits by a probation provider, (3) wear a GPS ankle monitor, (4) not leave his house without being accompanied by someone over the age of eighteen, and (5) provide a letter from his religious leader notifying the court of the leader's knowledge of the charges against Taylor.

¶3      After his release, Taylor filed regular reports of the probation provider's weekly random visits through March 16, 2021, but he provided no monitoring reports after that time, even though the court never removed or modified that condition. In May 2021, Taylor asked the court for permission to remove his ankle monitor, asserting that he is diabetic and was suffering from swelling in his leg. The court ordered that the monitor be removed but instructed that it be put back on once Taylor recovered from his swelling. But there is no evidence that Taylor ever put the monitor back on.

¶4      Trial was initially scheduled for July 2021. However, in May 2021, Taylor requested that the trial dates be stricken due to his alleged poor health, and the court set new trial dates for October 2021. In September 2021, Taylor succeeded in postponing

trial a second time, again citing health concerns, and trial was rescheduled for April 2022.

¶5      At a status hearing in October 2021, the court asked Taylor to provide medical records within thirty days to substantiate his claim that he was physically and mentally unable to participate in trial and assist in his defense. Taylor did not provide those records. Over the next several months, however, defense counsel continued to assert that Taylor was suffering from severe health problems and that she could therefore not consult with him to prepare his defense. At a pretrial conference in March 2022, the court again postponed trial, this time until October 31–November 4, 2022, because defense counsel had a conflict with another trial. Counsel represented at that time that Taylor's health remained poor and that he could not participate in trial. Counsel had by then provided some medical records from Taylor, but the court was apparently not convinced that the health concerns identified in the records would prevent Taylor from participating in trial.

¶6      On October 17, 2022, Taylor filed a motion to continue trial again or, alternatively, to hold an evidentiary hearing regarding his health to determine whether he would be "able to be present and effectively assist counsel at trial." The court considered the motion at a hearing on October 18. Defense counsel indicated at the hearing that she had spoken to several of Taylor's physicians, who she represented had indicated that it would be difficult for Taylor to participate in a four-day trial, but counsel was not able to provide any medical documentation in support of her representations. The court stated that if counsel could obtain more definitive medical documentation, it would hold an evidentiary hearing. When counsel was unable to obtain the necessary documentation, the court ordered Taylor to undergo an independent medical examination "to determine his fitness to participate in a criminal trial, to travel, and to determine whether a secure facility could adequately address his needs were he in

custody." The court again postponed trial pending the outcome of the medical examination.

¶7 A jointly retained physician who was selected by the defense reviewed Taylor's medical records and performed a physical examination. Taylor arrived at the examination on a gurney, transported by "EMTs or similar personnel." After reviewing Taylor's medical records and examining Taylor, the examining physician provided the following opinions:

- "Taylor is currently capable of attending and participating in a four-day jury trial, in Utah."

- Taylor should be able to "tolerate sitting for two or three hours at a time," "listen to the proceedings attentively and participate in his defense including by consultation with his defense counsel," and "testify coherently if the need arises."

- Taylor "had been capable of attending a four-day jury trial previously and up to the present day."

- Taylor may need accommodations such as use of a reclining chair, access to his oxygen tank, and a fifteen-minute break "every hour or so."

- "[A] jail or prison would be and should be able to accommodate any health needs that [Taylor] has."

- Taylor could "travel by air or by [private] land vehicle to Utah."

¶8 After the medical exam was completed, the district court scheduled a status hearing for May 16, 2023, which was to be "conducted remotely." At the May 16 hearing, the State requested "an in-person hearing to discuss [Taylor's] custody status." The court orally granted the motion and set the requested hearing for

June 13, 2023. It then confirmed that setting by a written order dated May 25, 2023.

¶9　　The State filed a motion on May 26, 2023, asking the court to revoke Taylor's pretrial release. The State asserted that receipt of the examining physician's report constituted a material change in circumstances sufficient to justify revocation of Taylor's pretrial release because Taylor had "inflated his medical condition over the past four and a half years to avoid trial" and because Taylor had not complied with the court's orders requiring weekly random home visits by a probation provider and the wearing of a GPS ankle monitor. Taylor filed a response on June 7, 2023, arguing that the findings in the report did not constitute a material change in circumstances and that there was no basis for altering his pretrial release status.

¶10　　At the June 13, 2023 hearing, the court considered the State's motion. Taylor appeared remotely at the hearing, rather than in person as ordered, claiming he was "too ill to attend." Defense counsel argued that there had not been a change in circumstances that would warrant taking Taylor into custody and requested an evidentiary hearing to get the examining physician to testify, along with Taylor's doctors if counsel could "get any of [them] to actually respond."

¶11　　The court declined defense counsel's invitation to schedule an additional evidentiary hearing. Instead, after reviewing the parties' filings and hearing argument, it ruled on the State's motion that day, revoking Taylor's pretrial release and issuing a warrant to have him extradited from Colorado. A few days later, the court issued a written order outlining Taylor's history of obtaining continuances based on purported illness and his failure to provide medical documentation of his illness. The court found that Taylor had "ample opportunity" to present evidence at the June 13 pretrial status modification hearing but did not produce anything to contradict the examining physician's report that

Taylor was capable of standing trial. The court found the examining physician's report to be a material change in circumstances indicating that Taylor had been malingering to avoid trial. The court determined that Taylor's "continued assertions of medical issues on the eve of scheduled trial dates" were unjustifiable, and it construed them as demonstrating a "history of willful failures to appear without cause."

¶12 Having determined that there had been a material change in circumstances to justify a modification of its pretrial status order, the court then addressed the standard factors for determining whether pretrial release should be denied: whether there was substantial evidence to support the offense charged; whether Taylor was likely to flee the jurisdiction of the court or posed a risk to an individual or the community if released; and whether there were available conditions of pretrial release that could reasonably ensure public safety, Taylor's appearance in court, and the furtherance of the criminal justice process. *See* Utah Code § 77-20-201(1)(c); *Randolph v. State*, 2022 UT 34, ¶ 29, 515 P.3d 444. The court determined that these factors weighed in favor of revoking pretrial release, and it therefore ordered Taylor's pretrial release revoked and for Taylor to be taken into custody. Taylor now appeals that order.

ISSUES AND STANDARDS OF REVIEW

¶13 Taylor first asserts that the district court violated the requirements of Utah's bail—i.e., pretrial release—statute by refusing to continue the scheduled pretrial status modification hearing. "We review a district court's denial of a motion for a continuance for an abuse of discretion." *Mackin v. State*, 2016 UT 47, ¶ 21, 387 P.3d 986. "An error of law by the district court, however, would be an abuse of discretion." *Goggin v. Goggin*, 2011 UT 76, ¶ 26, 267 P.3d 885.

¶14 Taylor also argues that the court erred in finding a material change in circumstances justifying a modification of the court's pretrial status order. The parties agree that this is a mixed question that is more fact-like than law-like and that we should therefore review it deferentially. *See Randolph v. State*, 2022 UT 34, ¶ 24, 515 P.3d 444.[1]

## ANALYSIS

¶15 In considering whether to modify a pretrial status order, a court may base its ruling "on evidence provided at the hearing so

---

1. The State asserts that the two issues raised by Taylor are moot because Taylor did not challenge an "independent basis for [the court's] decision"—that Taylor violated his pretrial release conditions by never replacing the GPS monitor and by not regularly reporting visits from a probation provider after March 16, 2021. *See Living Rivers v. Executive Dir. of the Utah Dep't of Env't Quality*, 2017 UT 64, ¶ 33, 417 P.3d 57 ("When a party appeals one basis for a lower court's or agency's disposition, but does not challenge the court's or agency's separate basis for its decision, the issue on appeal is considered moot because the requested judicial relief cannot affect the rights of the litigants." (cleaned up)). While the court did find that Taylor had failed to comply with these conditions and that the violations contributed to the court's concerns regarding whether Taylor was a danger or a flight risk, the court did not clearly identify these violations as an independent basis for its determination that there had been a material change in circumstances. Because a finding of a material change in circumstances is a prerequisite to modifying a pretrial status order, *see* Utah Code § 77-20-207(1), and because the court did not specifically find that the violations standing alone constituted a material change in circumstances, we cannot say that the violations were an independent basis for the revocation order.

long as each party is provided an opportunity to present additional evidence or information relevant to pretrial release." Utah Code § 77-20-207(4)(b). Taylor argues that he was denied the opportunity to present evidence on whether to modify the pretrial status order because the district court declined to continue the scheduled hearing to allow him to question the examining physician and call additional witnesses. We disagree.

¶16   On May 16, 2023, the court orally ordered a hearing on June 13, 2023—four weeks later—"to discuss [Taylor's] custody status." It then issued a written order confirming that setting. When a court sets a pretrial detention or pretrial status modification hearing—i.e., a hearing to discuss the defendant's custody status—for a date that gives counsel a reasonable time to prepare, then counsel must be ready, unless otherwise notified by the court, to present at that hearing both the arguments and evidence counsel wishes the court to consider on the issue of pretrial detention. *See id.* § 77-20-206(4) ("*At the pretrial detention hearing* . . . the judge shall give both parties the opportunity to make arguments and to present relevant evidence or information . . . ." (emphasis added)).

¶17   Here, Taylor had four weeks after the court set the pretrial status modification hearing to gather evidence and subpoena witnesses, and he had been on notice since October 2021 that the court expected medical evidence to support his claims of inability to participate in a trial. Yet there is no indication that Taylor made any effort to gather evidence or subpoena witnesses, including the examining physician, during the month preceding the hearing, and there is no apparent reason why he could not have done so. Moreover, to obtain "a continuance to procure the testimony of an absent witness," the requesting party must show "that the witness could actually be produced, that the witness could be produced within a reasonable time, and that due diligence has been exercised before the request for a continuance." *Mackin v. State*, 2016 UT 47, ¶ 33, 387 P.3d 986 (cleaned up). There is nothing to

indicate that scheduling an additional evidentiary hearing at a later date would have allowed Taylor to present evidence from his own doctors. Defense counsel had struggled to obtain statements from Taylor's doctors in the past and, in fact, expressed skepticism at the June 13 hearing regarding whether she could "get any of [them] to actually respond." In short, the court's refusal to further delay the case by scheduling yet another hearing did not deprive Taylor of the opportunity to present evidence. Thus, the court did not abuse its discretion by denying the request for a continuance.

¶18   We next turn to the question of whether the district court erred in determining that there had been a material change in circumstances to justify modification of the pretrial status order. *See* Utah Code § 77-20-207(1) ("A party may move to modify a pretrial status order . . . only upon a showing that there has been a material change in circumstances."). Under the governing statute, a material change in circumstances includes "a willful or repeated failure by the defendant to appear at required court appearances" or "any other material change related to the defendant's risk of flight or danger to any other individual or to the community if released." *Id.* § 77-20-102(10)(a)(iv)–(v).

¶19   The district court found that "the availability of [the examining physician's] opinion [was] a material change in circumstance" because it demonstrated that Taylor was "deliberately malingering to avoid the criminal process." The court was particularly unimpressed by the fact that Taylor showed up for the independent medical examination on a gurney and accompanied by "EMTs or similar personnel." Given the examining physician's findings regarding Taylor's capabilities, the district court considered this to be further evidence of malingering and an attempt to manipulate the examining physician. The court concluded that because Taylor had "always [been] able to attend court proceedings according to [the examining physician], . . . [his] continued assertions of medical

issues on the eve of scheduled trial dates, and his failure to appear when ordered at the . . . custody re-evaluation hearing were willful and lacked good cause and were not otherwise justifiable as reasonable or justifiable neglect." Noting that "a history of nonappearance at required court hearings is a specified factor" for finding a material change in circumstances, *see id.* § 77-20-102(10)(a)(iv), the court then construed Taylor's "continued assertions of medical issues on the eve of scheduled trial dates" and his failure to appear in person as ordered at the pretrial status modification hearing to be "willful failures to appear without cause" and, thus, "sufficient grounds to revoke bail."

¶20   Taylor argues that obtaining multiple continuances of trial, even if based on exaggerated symptoms, did not constitute a failure to appear at required court appearances. We agree. Apart from the pretrial status modification hearing itself, at which Taylor appeared remotely rather than in person as ordered, the record does not indicate that Taylor failed to appear at any required hearing.[2] Requesting and obtaining continuances—even on false pretenses—is simply not the same thing as failing to appear at scheduled hearings. Thus, the court's finding that Taylor had repeatedly failed to appear at scheduled hearings was clearly erroneous. *See Brown v. State*, 2013 UT 42, ¶ 37, 308 P.3d 486 (explaining that a factual finding is clearly erroneous "only if it is against the clear weight of the evidence, or if we otherwise

---

2. Although a willful failure to appear at a single hearing could theoretically constitute a material change in circumstances, the court's findings do not suggest that its ruling was based only on Taylor's failure to appear in person at the pretrial status modification hearing. Instead, the court took issue with Taylor's "history of willful failures to appear" and made clear that its primary concern was Taylor's "continued assertions of medical issues on the eve of scheduled trial dates."

reach a definite and firm conviction that a mistake has been made" (cleaned up)).

¶21   Nevertheless, we affirm the district court's determination that there was a material change in circumstances justifying a modification of the pretrial status order because the court made findings that support a determination that there had been a "material change related to the defendant's risk of flight . . . if released." Utah Code § 77-20-102(10)(a)(v). *See generally Bailey v. Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158 ("It is well settled that an appellate court may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action . . . ." (cleaned up)).

¶22   The court found that the examining physician's report indicating that Taylor was malingering to avoid trial raised concerns that Taylor was a flight risk, a concern that "was substantiated by [Taylor] failing to personally appear . . . as ordered at the custody re-evaluation hearing." The court found that there had been "at least three instances where trial dates were postponed to defer to [Taylor's] alleged needs and condition," indicating that Taylor was using his exaggerated condition to avoid prosecution. Moreover, the court found that Taylor had "evaded" the GPS monitoring requirement and the home visit reporting requirement by asserting exaggerated medical obstacles and, thus, that the court could not "even say with a great deal of confidence where [Taylor] is living in Colorado."

¶23   These findings support a determination of a material change in circumstances with respect to Taylor's risk of flight. Indeed, a court may conclude, in appropriate cases where supported by the record, that a defendant who has engaged in persistent deception to avoid trial will be at an increased risk of flight when his deception is unveiled and his case proceeds relatively apace. In this case, that increased risk of flight is

amplified by Taylor's out-of-state residence and the district court's unchallenged finding that it can no longer "even say with a great deal of confidence where [Taylor] is living in Colorado."[3] Accordingly, we uphold the district court's finding of a material change in circumstances justifying a modification in Taylor's pretrial detention status.

CONCLUSION

¶24 Because Taylor could have gathered evidence and subpoenaed witnesses prior to the pretrial status modification hearing, we conclude that he was given an adequate opportunity to present evidence at that hearing. Thus, the district court did not exceed its discretion in declining to continue the matter. Additionally, we uphold the court's determination that a material change in circumstances justified a modification of Taylor's pretrial detention status, although we do so on a different basis than that identified by the court. Accordingly, we affirm the court's order revoking Taylor's pretrial release.

_____

3. The court's determination that Taylor's malingering increased the risk that he might flee to avoid trial has apparently been borne out in this case: At a pretrial conference held while the pretrial release issues were pending on appeal, Taylor did not appear, and his trial counsel reported that they had "not had any contact with [him]." There is currently an outstanding warrant for Taylor's arrest.